UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| V. | § | Crim. No. SA-06-CR-374 |
| | § | |
| | § | |
| CARL RANDAL MCBRIDE | § | |

ORDER

On this day came to be considered Defendant's Motion to Suppress (docket no. 115).

1.　　On April 24, 2006, a complaint was filed alleging that on March 7, 2006, the Defendant verbally threatened to kill Christopher Scott, a public servant. On May 1, a Texas state judge ordered that the Defendant be arrested, and on May 2 an arrest warrant was issued.

2.　　On September 11, 2006, the Defendant was a passenger in a pickup truck when it was stopped for a traffic violation. The New Braunfels Police Officer making that traffic stop discovered that both the driver and the Defendant had outstanding warrants and they were both arrested. When that pickup truck was impounded and searched, a back pack was located in the floorboard area of the passenger area. The back pack was later discovered to contain a portable weighing scale, a plastic smoking pipe, and several small, Ziploc plastic bags.

3.　　Sometime later (about 4:13 p.m.), Department of Public Safety Narcotics Sergeants met the Defendant at the Comal County Magistrate's area. The interview was recorded. The recording indicates that the Defendant was not provided his *Miranda* warnings until almost seven minutes after the interview began. Before he was provided his *Miranda* warnings, the Defendant was asked what other activities he may be involved in (1:12); advised that there were things he might want to help himself out with (2:02); the Defendant admitted he owned the bag (2:29); the Defendant admitted to drug use, but denied he was a "big wig" (3:35); was asked about any contacts he might have (3:55); was asked who he was "scoring" from back in May or June (4:27); and the Defendant admitted scoring from Zoe or Alonzo. The Defendant was also shown a photo spread that contained a photo of Alonzo, whom the Defendant positively identified.

1

4.      After the above questions were asked and answers provided, the Defendant was given his *Miranda* warnings (6:50). The Defendant acknowledged understanding his rights (7:38). Thereafter, the Defendant admitted trying to score 2-3 grams (24:20); trying to get large amounts (24:45), and admitted to introducing potential buyers to Alonzo (35:52). In addition, the Defendant was asked a variety of other background questions regarding other possible drug conspirators. At 44:41, the tape abruptly ended ostensibly because of a technical problem. The interview concluded at approximately 5:37 p.m.

5.      During the interview the Defendant was cooperative. No threats or abusive tactics were used. At no time did Defendant request an attorney or request that the interview stop. The DPS Sergeant questioning the Defendant strategically decided before the interview not to provide any *Miranda* warnings so that he could gather background information to "determine [Defendant's] level of truthfulness and degree of cooperation."

6.      Defendant argues that the back pack was searched without a warrant and that the alleged drug paraphernalia found therein should be suppressed. The Government argues that the vehicle was searched after a lawful arrest of the driver and the Defendant. After the car was impounded, its contents were inventoried pursuant to the New Braunfels Police Department Motor Vehicle Inventories Policy. That policy provides that all "closed containers found within the vehicle shall be opened for purposes of the inventory." Relying upon *Colorado v. Bertine*, 479 U.S. 367 (1987), the Government contends that the backpack could have been opened and inventoried without first obtaining a search warrant. This Court agrees. *See also U.S. v. Como*, 53 F.3d 87 (5th Cir. 1995)(police officers may open closed containers found within locked trunks while conducting routine inventory searches of impounded vehicles); *U.S. v. Judge*, 864 F.2d 1144 (5th Cir. 1989). There was no showing of bad faith or any showing that the sole purpose of the inventory was to conduct an investigation.

7.      The Government concedes that it will not attempt to introduce any questions or answers from the interview prior to the administration of the *Miranda* warnings. Defendant argues that the remainder of the interview should also be suppressed because the Government impermissibly baited the Defendant and any later procured consent was not voluntary.

8.      In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that, in order to preserve the privilege against self-incrimination, law enforcement officials must inform a suspect in custody of his right to remain silent, that any statement he makes may be used as evidence against him, and that he has a right to retained or appointed counsel. *Id.* at 444. Generally, statements obtained during a custodial interrogation without providing adequate warnings under *Miranda* are inadmissible. *Missouri v.*

2

*Seibert*, 542 U.S. 600, 608 (2004).  McBride was interviewed while under arrest and in the Comal County Magistrate's area.  This was a custodial interrogation.

9.    In *Oregon v. Elstad*, 470 U.S. 298 (1985), the Supreme Court reviewed "whether an initial failure of law enforcement officers to administer the warnings required by *Miranda* without more, taints subsequent admissions made after a suspect has been fully advised of and has waived his *Miranda* rights."  *Id.* at 300.  In *Elstad*, officers arrived at his home to serve an arrest warrant for theft.  The officers asked him to get dressed and to accompany them into the living room.  One of the officers asked Elstad's mother to step into the kitchen, where he explained that they had a warrant for her son's arrest for the burglary of a neighbor's residence.  Another officer remained with Elstad in the living room.  Prior to administering any *Miranda* warnings, that officer asked Elstad if he was aware of why the police were there to talk with him.  He stated no, he had no idea why they were there.  He was asked if he knew a person by the name of Gross, and he said yes, he did, and also added that he heard that there was a robbery at the Gross house.  The officer told Elstad that he felt he was involved in that, and Elstad stated, "Yes, I was there."  Elstad was then transported to the Sheriff's headquarters and approximately one hour later, he was given his *Miranda* warnings.  Elstad then gave a full statement.  The statement was later typed and signed by Elstad.

10.    The majority opinion in *Elstad* held that in determining whether the second statement was voluntarily made, "the finder of fact must examine the surrounding circumstances and the entire course of police conduct with respect to the suspect in evaluating the voluntariness of his statements.  The fact that a suspect chooses to speak after being informed of his rights is, of course, highly probative.  We find that the dictates of *Miranda* and the goals of the Fifth Amendment proscription against use of compelled testimony are fully satisfied in the circumstances of this case by barring use of the unwarned statement in the case in chief.  No further purpose is served by imputing taint to subsequent statements obtained pursuant to a voluntary and knowing waiver.  We hold today that a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite *Miranda* warnings."  *Id.* at 318.

11.    The Supreme Court again visited this issue in *Missouri v. Seibert*, 542 U.S. 600 (2004).  Seibert tested "a police protocol for custodial interrogation that calls for giving no warnings of the rights to silence and counsel until interrogation has produced a confession.  Although such a statement is generally inadmissible, since taken in violation of *Miranda*, the interrogating officer follows it with *Miranda* warnings and then leads the suspect to cover the same ground a second time.  The question here is the admissibility of the repeated statement."  The Supreme Court concluded that because "this midstream recitation of warnings after interrogation and unwarned confession could not effectively comply with *Miranda's* constitutional

requirement, we hold that a statement repeated after a warning in such circumstances is inadmissible." *Id.* at 604.

12.     In distinguishing *Elstad*, the Supreme Court "noted that the pause in the living room was not to interrogate the suspect but to notify his mother of the reason for his arrest, and described the incident as having none of the earmarks of coercion. The Court, indeed, took care to mention that the officer's initial failure to warn was an oversight that may have been the result of confusion as to whether the brief exchange qualified as custodial interrogation or may simply have reflected reluctance to initiate an alarming police procedure before an officer had spoken with [Elstad's] mother." *Seibert*, 542 U.S. at 614.

13.     The Fifth Circuit has directly addressed the impact of *Seibert* in *U.S. v. Courtney*, 463 F.3d 333 (5th Cir. 2006). In Courtney, the Defendant was subjected to noncustodial interrogations and "because the first two statements were not obtained in violation of Miranda, the district court erred in applying *Seibert*." *Id.* at 337. Nevertheless, the Fifth Circuit went on to conclude that "*Seibert* requires the suppression of a post-warning statement only where a deliberate two-step strategy is used and no curative measures are taken; where that strategy is not used, the admissibility of postwarning statements continues to be governed by the principles of *Elstad*. Consequently, if the district court determined that Courtney's first two statements were obtained in violation of *Miranda*, the next inquiry would have been whether a deliberate two-step strategy was used." *Id.* at 338.

14.     This Court concludes, and the DPS Sergeant at the suppression hearing admitted, that a deliberate two-step strategy was used in questioning the Defendant. If the officer had not employed a deliberate strategy to deprive McBride of his protections against self-incrimination, *Elstad* would have applied. *See U.S. v. Hernandez*, Slip Copy, 2006 WL 2602078 (5th Cir. 2006). Because the DPS Sergeant's initial failure to warn was not a mere oversight, the Defendant was in custody at the time of the interrogation, and a deliberate two-step strategy was used in questioning the Defendant, *Seibert* is applicable. Accordingly, given these circumstances, the statements made after the *Miranda* warnings were given are inadmissible.

4

For the reasons stated above, the Defendant's motion to Suppress (docket no. 115) is GRANTED, in part, and DENIED, in part.  The alleged drug paraphernalia found in the back pack is not suppressed.  The statements made by the Defendant during his custodial interrogation are suppressed.

It is so ORDERED.

SIGNED this 8th day of January, 2007.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE